UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TARA REDMOND,

                       Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.

_____

**REPORT AND
RECOMMENDATION**

07-CV-494
(LEK/VEB)

## I. INTRODUCTION

In July of 2004, Plaintiff Tara Redmond filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since October 26, 2003, primarily due to back pain. Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Conboy, McKay, Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action on May 8, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 20).

For the reasons set forth below, the Court finds no reversible error and finds that

substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for DIB on July 6, 2004, alleging that she had been unable to work since October 26, 2003. (T[1] at 14, 61).  The application was denied. (T at 14, 24-28).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on December 13, 2004.  (T at 29).  On July 11, 2005, Plaintiff appeared with counsel at a hearing before ALJ Franklin T. Russell.  (T at 29, 269).  A continued hearing was held on November 14, 2005, to receive testimony from a vocational expert.  (T at 108, 293).  Thereafter, the claim was transferred to ALJ Elizabeth Koennecke.  On May 22, 2006, ALJ Koennecke held a video hearing to gather information regarding the severity, nature, and impact of Plaintiff's conditions. (T at 303).  Plaintiff and her attorney appeared via videoconference from Canton, New York.  ALJ Koennecke conducted the hearing from Syracuse, New York.  (T at 14, 303).

On September 18, 2006, the ALJ issued a written decision denying the application for benefits.  (T at 14-23).   The ALJ's decision became the Commissioner's final decision on April 9, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

Plaintiff commenced this action on May 8, 2007. (Docket No. 1).  Plaintiff filed a supporting Brief on August 28, 2007. (Docket No. 12). The Commissioner filed a Brief in opposition on December 13, 2007. (Docket No. 18).

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

## III. DISCUSSION

### A.   Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford*

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

*v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

4

activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See *Bowen*, 482 U.S. at 146 n. 5; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements for DIB through June 30, 2005, and had not engaged in substantial gainful activity between October 26, 2003 and June 30, 2005. (T at 16). In addition, she determined that Plaintiff suffers from the following severe impairments pursuant to 20 CFR § 404.1520 (c): lumbar spine degenerative joint disease with diagnostic evidence of a L4/5 herniation and obesity. (T at 17).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 17). The ALJ found that Plaintiff retained the residual functional capacity to perform a "wide range of work consistent with the sedentary level of exertion." (T at 21). The ALJ found that Plaintiff can lift/carry up to ten (10) pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools. The ALJ also concluded that Plaintiff could sit for up to six (6) hours and stand and/or walk for thirty (30) minutes at a time for up to two (2) hours all during the course of an eight (8) hour workday. (T at 18).

The ALJ found that Plaintiff is unable to perform her past relevant work as a certified nurse's aide. (T at 22). However, considering Plaintiff's age (20 at the time of alleged onset of disability), educational background (8th grade ), and residual functional capacity, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy. (T at 20, 22-23). Accordingly, the ALJ concluded that Plaintiff is not

under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 23).

 As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers five principal arguments in support of her position.  First, she argues that the Commissioner erred by finding that her back impairment did not meet or medically equal §1.04 (A) of the Listings.  Second, she contends that the Commissioner should have given controlling weight to the assessments of her treating physicians.  Third, Plaintiff claims that the ALJ failed to properly calculate her residual functional capacity.  Fourth, Plaintiff argues that the ALJ improperly discounted her complaints of disabling pain.  Fifth and finally, Plaintiff contends that the ALJ erred by finding that there is other work that she can perform.  This Court will address each argument in turn.

### a.    §1.04(A) of the Listings

Plaintiff contends that her back impairment meets or equals the spine disorder impairment identified in § 1.04(A), 20 C.F.R. Part 404, Subpart P, Appendix 1 (commonly referred to as "the Listings").

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or medically equals a listed impairment, the evaluation process is

concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

Listing 1.04(A) provides as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); ....

20 C.F.R. Pt. 404, Subpt. P, App. 1.

"Thus, in order to satisfy this listing, plaintiff must establish that (1) she has a disorder of the spine which compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *McKinney v. Astrue*, 05-CV-174, 2008 WL 312758, at *4 (N.D.N.Y. Feb. 1, 2008).

Plaintiff argues that her back impairment satisfies the requirements of § 1.04 (A). Specifically, she points to a January 2004 MRI, which showed compromise of her nerve root in the form of a moderate-sized central disc herniation at L4-5 with an indentation of the thecal sac and both descending L5 nerve roots. (T at 128, 157).  With regard to neuro-anatomic distribution of pain, the record indicates that Plaintiff's pain has been described as "radiating," "constant," "sharp," "shooting," and "severe," with a tendency to radiate

throughout her back, into her shoulders, and down into her legs. (T at 138, 143, 155, 157, 167).

Concerning limitation of motion, Plaintiff was examined by examining physician Dr. John Krawchenko, a neurosurgeon, who indicated that she had "hardly any range of movement of her lower back to a couple of degrees with more pain." (T at 155).  Dr. Christopher Horn, one of Plaintiff's treating physicians, noted "[t]enderness of the lower back, plus discomfort" when he attempted to test her range of motion. (T at 157).  Dr. Donald Paarlberg conducted an Independent Medical Examination in February 2004, and indicated that Plaintiff could only "forward flex about 40 degrees and side bend 5 degrees." (T at 169).   A subsequent exam by Dr. Paarlberg showed similar findings.  (T at 234).  Dr. Gerald R. Amatucci examined Plaintiff and noted "some decreased motion of the lumbosacral sprine." (T at 194).

Plaintiff points to evidence in the record tending to show muscle weakness and motor loss accompanied by sensory or reflex loss.  Dr. Krawchenko noted that Plaintiff had "difficulty sitting and getting out of a chair." (T at 155).  He indicated that she "limps and favors the right leg more than the left." (T at 155).  Dr. Krawchenko opined that Plaintiff had "diffuse weakness in the right leg" and noted that she "walks slowly and hesitantly." (T at 156).  Dr. Amatucci indicated that Plaintiff "had a limping gait favoring her left leg" and noted "modest to moderate difficulty getting on and off the examination table." (T at 195).  Dr. James Naughten conducted an orthopedic consultative examination in February 2006 and noted a "moderate limp of the right leg," with "mild to moderate difficulty getting on and off the exam table as well as arising from the chair." (T at 246).  Dr. Naughten also indicated "[d]ecreased sensation to touch and pinprick of the right leg." (T at 247).

9

Lastly, Plaintiff asserts that the record contains evidence of positive straight leg raising tests performed by Dr. Bhat (T at 124-25), Dr. Krawchenko (T at 155), Dr. Horn (T at 157), Dr. Amatucci (T at 194), and Dr. Naughten (T at 246).

The ALJ concluded that Plaintiff did not meet the requirements of §1.04 of the Listings, noting that there was "an absence of objective signs of a spine disorder showing nerve root compression accompanied by sensory or reflex loss." (T at 17). This decision was supported by substantial evidence.

The burden is on the claimant to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998). In order to show that an impairment matches a Listing, the claimant must show that his or her impairment meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); 20 C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.*

In this case, the ALJ reasonably concluded that there was insufficient evidence of motor loss accompanied by sensory or reflex loss.  Several examinations by Dr. Bhat, Plaintiff's initial treating physician, noted normal reflexes and sensation. (T at 121, 123, 126, 129).  Dr. Krawchenko indicated "good touch sensation in both legs and feet, some tingling and paresthesias in the right thigh, but not sensory loss objectively or complained of." (T at 156).  He also noted normal reflexes. (T at 156).  Dr. Horn opined that Plaintiff's reflexes were "preserved," with "no motor weakness." (T at 157).  He also noted "[n]o sensory change." (T at 157).  Dr. Amatucci indicated that Plaintiff "[s]howed sensation intact throughout," with "[m]otor strength 5/5 throughout." (T at 195).  Although Dr. Naughten, the

10

consultative examiner, noted "[d]ecreased sensation," he also opined that Plaintiff had "[n]o muscle atrophy." (T at 246).  Dr. Adam Jarrett examined Plaintiff in November 2005.  While he reported Plaintiff's complaints of "numb feelings bilaterally," upon a physical examination, he concluded that Plaintiff's motor strength was "5/5." (T at 241).

It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See *Richardson*, 402 U.S. at 399. As noted above, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).  The Court finds that substantial evidence exists to support the ALJ's finding that Plaintiff did not meet her burden of establishing motor loss accompanied by sensory or reflex loss, as necessary to meet Listing §1.04 (A). See*, e.g.*, *McKinney*, 2008 WL 312758, at *5 (finding the ALJ's decision that the Plaintiff did not meet Listing § 1.04(A) supported by substantial evidence where the Plaintiff did not satisfy all the criteria symptoms of the Listing).[3]

### b.    Treating Physician Rule

Plaintiff also argues that the ALJ improperly discounted the opinions of her treating physicians.  Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician"s opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362

---

[3]In addition, the Commissioner notes there is also a question as to whether Plaintiff satisfied the positive straight leg raising testing requirement of the Listing.  The positive test findings noted by Plaintiff were contradicted by negative findings (T at 125, 127), including a finding by Dr. Horn that "straight leg raising [was] virtually unrestricted." (T at 158).

F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also *de Roman*, 2003 WL 21511160, at *9; *Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998).

In this case, Plaintiff points to the findings of Dr. Bhat, her treating physician, to the effect that Plaintiff was under a total disability and unable to return to work. (T at 122, 133). Dr. Krawchenko likewise concluded that Plaintiff was "totally disabled." (T at 156). Dr. Latimer found that Plaintiff's pain was "incapacitating" and that she was "restricted from the work place and . . . unable to function at a productive level." (T at 207).

The ALJ noted her obligation to comply with the treating physician's rule (T at 19), but concluded that the opinions of Dr. Bhat and Dr. Latimer were not entitled to controlling weight. (T at 19-22). The Court finds that the ALJ applied the correct legal standard and that her decision in this regard was supported by substantial evidence.

First, the issue of "disability" under the Act is not a medical issue to be decided by

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." *de Roman v. Barnhart*, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

a treating source, but an administrative finding reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); SSR 96-5p.  A statement by a treating physician that an individual is disabled is not, by itself, controlling.   The ALJ is thus not obligated to accept the assessment of a claimant's treating physician or any other source as to the ultimate question of whether the claimant is disabled. See 20 C.F.R. § 404.1527 (e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Second, Dr. Krawchenko was not one of Plaintiff's treating physicians and his opinion was therefore not entitled to controlling weight on that basis.  Indeed, it appears that he only examined Plaintiff on one occasion. (T at 229, 280). See *Sapienza v. Shalala*, 894 F.Supp. 728, 733 (S.D.N.Y. 1995)((citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir.1983)(finding that physician who only examined claimant one time was not a "treating source").

Third, the disability findings by Drs. Bhat, Latimer, and Krawchenkco were made in the Workers' Compensation context, which applies different standards relative to disability determinations than those applied by the Commissioner.   See *Rosado v. Shalala*, 868 F.Supp. 471, 473 (E.D.N.Y.1994) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir.1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); see also *Crow v. Comm'r of Soc. Sec.*, No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the

13

opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

Fourth, Dr. Latimer's assessment of the nature and severity of Plaintiff's impairment was inconsistent with other substantial evidence in the record.  Dr. Latimer opined that Plaintiff could occasionally lift/carry less than 10 pounds, stand/walk for less than 2 hours in an 8 hour work day, sit for less than about 6 hours in an 8 hour work day, and was limited in her lower extremities with regard to pushing and pulling. (T at 203-204).  Dr. Latimer further indicated that Plaintiff could never climb, balance, kneel, crouch, crawl, or stoop; that her pain was incapacitating; and that she was restricted from the workplace and unable to function at a productive level. (T at 204, 207).

Dr. Latimer's assessment was contracted by the findings of Dr. Amatucci's consultative examination.  Dr. Amatucci noted normal range of motion in Plaintiff's spine, shoulders, wrists and hands, and ankles and feet.  (T at 194).  He also indicated that she showed "no muscle atrophy or hypertrophy" and had motor strength of "5/5 throughout." (T at 194-95).  Further, Dr. Paarlberg examined Plaintiff on at least three occasions and concluded that Plaintiff "could return to work . . . with a sit/stand option with no repetitive bending or lifting over 15 pounds." (T at 235).  Dr. James Naughten, a consultative examiner, opined in February of 2006 that Plaintiff had "[m]oderate limitation to walking and climbing stairs" and "[m]ild to moderate limitation to pushing, pulling, and reaching." (T at 247).  Dr. Naughten also indicated that Plaintiff "would be able to lift and carry a mild

degree of weight on an intermittent basis." (T at 247).[5]  Dr. Latimer's assessment that Plaintiff is unable to lift more than 10 pounds was also contradicted to some extent by Plaintiff's testimony, in which she indicated that she could lift 10 to 15 pounds. (T at 307).

The ALJ was mindful of her duty to re-contact Dr. Latimer and request further information regarding his assessment.  See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").  To that end, the ALJ advised Plaintiff's counsel to obtain additional clarification from Dr. Latimer and a further explanation of his findings. (T at 110). Plaintiff's counsel advised the ALJ that such information could not be obtained because Dr. Latimer was "no longer practicing." (T at 240).  Plaintiff testified that Dr. Latimer lost his medical license.[6]  (T at 310).  Plaintiff's counsel indicated that they had no objection to the record as of May 22, 2006, the date of the last hearing before the ALJ. (T at 311).

Lastly, the ALJ's assessment regarding Plaintiff's ability to perform sedentary work was supported by State Agency Review Physician Susan Pratt, who reviewed the medical evidence and concluded that Plaintiff could occasionally lift/carry 10 pounds; frequently lift/carry less than 10 pounds; stand/walk for at least 2 hours in an 8 hour work day; and sit

---

[5]Plaintiff notes that Dr. Naughten's assessment was provided in February 2006, which was outside of the relevant time frame for disability analysis (Plaintiff was insured for DIB purposes only though June 2005).  However, Plaintiff does not provide any evidence suggesting that her condition materially improved or changed during the intervening time period.  In addition, the ALJ noted that Dr. Naughten's findings were consistent with the record as a whole. (T at 22).

[6]The record also indicates that Dr. Bhat passed away and therefore could not be re-contacted. (T at 280).

for a total of about 6 hours in an 8 hour work day. (T at 198).  Dr. Pratt found that Plaintiff would reasonably be expected to "have pain and some loss of mobility," but that "the objective findings do not support the degree of limitation she describes." (T at 201).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

As noted above, it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson, 402 U.S. at 399. Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physicians and instead substituted her lay opinion for competent medical evidence.  Rather, the ALJ carefully considered all of the evidence, including the consultative examinations and State Agency Review assessment, and sought additional information from Plaintiff's treating physician. The ALJ's ultimate determination was made in accordance with the applicable legal standard and is supported by substantial evidence.  As such, this Court finds that the ALJ's decision should be affirmed.

### c.    Residual Functional Capacity Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

In this case, the ALJ determined that Plaintiff retained the RFC to lift/carry up to 10 pounds at a time and occasionally lift/carry articles like docket files, ledgers, and small tools; sit for up to 6 hours; and stand and/or walk for 30 minutes at a time for up to 2 hours during the course of an 8 hour work day. (T at 18).

Plaintiff argues that this RFC finding is contradicted by the assessments of her treating physicians and, in particular, with Dr. Latimer's RFC determination.  However, as discussed above, the ALJ properly weighed all of the medical evidence in the record and her RFC findings were supported by substantial evidence, including the assessments of Dr. Paarlberg and State Agency Review physician Dr. Pratt.  Further, Plaintiff's testimony regarding her activities of daily living is also supportive of the ALJ's RFC assessment. Plaintiff testified that she typically performs household chores such as dusting, dish washing, laundry and cooking. (T at 285-86).  She occasionally vacuums the house, goes shopping, completes puzzles and plays cards, and helps care for her two young children. (T at 287, 309, 313).

In light of the above, the Court finds that the ALJ's determination at the fifth step of

her analysis that Plaintiff had the RFC to perform sedentary work, and therefore was not entitled to DIB, was in accordance with the applicable legal standard and is supported by substantial evidence.

### d.    Assessment of Plaintiff's Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See *Ber v. Celebrezze*, 333 F.2d 923 (2d Cir.1994).  However, subjective symptomatology, without more, cannot be the basis for a finding of disability.    A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

18

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a credibility determination:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds the claimant's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that her pain was constant and disabling and that she is only able to sit or stand for 10 minutes at a time. (T at 278-79, 289). Plaintiff testified that her pain was so intense that she could "barely take care of [herself]." (T at 307). The ALJ concluded that Plaintiff's "allegations of a complete inability to perform work at any exertion are not fully supported by the medical evidence made a part of the record during the period in issue." (T at 21). The ALJ cited the medical evidence and Plaintiff's testimony concerning her activities of daily living in support of her decision to discount the credibility of Plaintiff's subjective complaints of disabling pain. In particular, the ALJ noted that Plaintiff

engaged in a "wide range" of activities of daily living, including watching television, caring for her two young children, caring for her personal needs, and socializing with friends. (T at 21). Although Plaintiff's subjective complaints suggested an inability to work, she became pregnant prior to the expiration of her insured status and managed her pain during that period with the use of over-the-counter Tylenol. (T at 21). Dr. Naughten's consultative examination only indicated mild to moderate limitations with no muscle atrophy, further indicating that Plaintiff's pain was not disabling to the extent alleged. (T at 246-47)

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir.1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ exercised her discretion in this case to evaluate the credibility of Plaintiff's testimony, presented a fair summary of her evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See *e.g. Mimms v. Sec'y of Health and Human Servs.*, 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

e.      **Ability to Perform Other Work**

The ALJ concluded that Plaintiff was not able to perform her past relevant work. (T at 22).  However, considering Plaintiff's age (20 years old on the alleged disability onset date), education (limited, but with the ability to speak English), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 22).

Plaintiff alleges that the ALJ improperly relied upon the Medical Vocational Guidelines to reach this conclusion and that a vocational expert should have been consulted.

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in *Zorilla v. Chater*, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

 In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age,

education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

*Id.*

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

Plaintiff argues that the ALJ should not have based her decision on the Grids because Plaintiff suffers from non-exertional limitations (*i.e.*, need to shift positions at will; postural limitations that prevent climbing, balancing, kneeling, crouching, stooping; incapacitating pain; and a need for medication and/or bed rest following any physical activity).

The use of the Grids is inappropriate "where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment . . . ." *Bapp*, 802 F.2d at 605-606 "'[S]ignificantly diminish' [ ] mean[s] the additional loss of work capacity beyond a negligible one or, ... one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.*

"If the ALJ finds that [plaintiff's] ability is significantly diminished, then the Commissioner should be required to present the testimony of a vocational expert or other

evidence concerning the existence of jobs in the national economy for an individual with [plaintiff's] limitations." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996).

In this case, the ALJ did not find that Plaintiff's work capacity was significantly diminished by her non-exertional impairments and concluded that she retained the RFC to perform sedentary work, findings supported by substantial evidence for the reasons discussed above.  Accordingly, the ALJ was not required to consult a vocational expert.

Further, in any event, a vocational expert was consulted in this case, even though the ALJ did not principally rely upon the expert's conclusions in her decision.  When presented with a hypothetical claimant with the same age, education, work history, and RFC as the Plaintiff, the vocational expert opined, in a letter to the ALJ, that such a person could perform the jobs of order clerk, new accounts clerk, and surveillance systems monitor, which jobs exist in significant numbers in the national economy. (T at 108-109).

Plaintiff notes that, upon being questioned about a hypothetical claimant with limitations consistent with Dr. Latimer's RFC determination, the vocational expert opined that such a claimant likely could not perform any sort of full-time work. (T at 300-301).  However, as discussed above, the ALJ did not afford controlling weight to Dr. Latimer's findings, a decision that was consistent with the applicable legal standard and supported by substantial evidence for the reasons stated above.

### IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the

23

record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. The Court finds no reversible error.  Because this Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   July 13, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 13, 2009

Victor E. Bianchini
United States Magistrate Judge

25